In re:   LAURA LYNNE DUGAS,                                    No. 24-10834-j13

           Debtor.

---

LAURA KELLY DUGAS,

           Plaintiff,                                               Adversary No. 24-1029-j

v.

STEPHEN NATELSON,
LAW OFFICES OF STEPHEN NATELSON, and
IKE GALLEGOS,

           Defendants.

## MEMORANDUM OPINION REGARDING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on a motion for summary judgment

(the "Summary Judgment Motion" – AP Doc. 46),[1] filed by defendant Stephen Natelson, and a

joinder (the "Joinder" – AP Doc. 55) filed by defendant Ike Gallegos (together with Mr.

Natelson, "Movants"). Movants seek (1) summary judgment in their favor on a claim for

damages for violation of the automatic stay because they assert no stay violation occurred and

(2) dismissal of all other claims for lack of subject matter jurisdiction. Alternatively, Movants

request that the Court permissively abstain from hearing all claims; they further assert that

certain requested relief is barred by the *Rooker-Feldman* doctrine.[2]

---

[1] References to "Doc." are to the docket in the underlying bankruptcy case, Case No. 24-10834-j13
(referred to below as the Second Bankruptcy Case), and references to "AP Doc." are to the docket in this
adversary proceeding, Adv. Proc. No. 24-1029-j.

[2] The Summary Judgment Motion is filed by Mr. Natelson in his individual capacity, but given the
circumstances, the Court will construe the Summary Judgment Motion as requesting summary judgment
on behalf of the Law Offices of Stephen Natelson as well. Further, in joining the Summary Judgment

In her adversary complaint, debtor-plaintiff Laura Dugas alleges that she and another party, Kurt Young, were purchasers of real property (the "Property") under a real estate contract with Mr. Gallegos. At some point, Mr. Gallegos—with Mr. Natelson acting as his attorney— brought a foreclosure action against her in New Mexico state court (the "State Court"), and the State Court entered a foreclosure judgment against her (the "2023 Dugas Foreclosure Judgment"). Ms. Dugas subsequently filed a chapter 13 bankruptcy case, which was dismissed, and then a second chapter 13 bankruptcy case within a year of the dismissal of the first bankruptcy case (the "Second Bankruptcy Case").[3]

Ms. Dugas's primary grievance against Mr. Gallegos and his state court attorney, Mr. Natelson, is that they violated the automatic stay in the Second Bankruptcy Case by filing a motion for ejectment and writ of restitution in the State Court, seeking to eject her from the Property (the "Ejectment Motion"). Ms. Dugas also asserts that additional filings in the State Court against Mr. Young violated the automatic stay, and she asserts additional claims against Mr. Gallegos and Mr. Natelson for violation of her right of due process and violation of procedural requirements in the foreclosure action. The Second Bankruptcy Case has since been dismissed.[4]

Ms. Dugas filed a response in opposition to the Summary Judgment Motion (AP Doc. 51), and Mr. Natelson filed a reply (AP Doc. 54). After consideration of the Summary Judgment Motion, the evidence submitted in support of the Summary Judgment Motion, the

---

Motion, Mr. Gallegos does not expressly state that he is requesting summary judgment in his own favor for the same reasons as set forth in the Summary Judgment Motion, but the Court will construe the Joinder that way.

[3] The "Second Bankruptcy Case" is Case No. 24-10834-j13.

[4] *See* Doc. 127.

Joinder, the response, and the reply, the Court will grant the Summary Judgment Motion in part and deny it in part.

As explained below, with respect to the stay violation claim, the Court will not abstain from hearing such claim. The Court determines that the automatic stay terminated with respect to Ms. Dugas on the 30th day after commencement of the Second Bankruptcy Case, pursuant to § 362(c)(3)(A),[5] but remained in effect with respect to property of the estate. The filing of the Ejectment Motion did not impact the stay against property of the estate, but the additional filings in State Court may have. The other claims asserted by Ms. Dugas are non-core claims relating to occurrences in the Foreclosure Action. Even if the Court had subject matter jurisdiction over these claims during the pendency of the Second Bankruptcy Case, the Court will not retain jurisdiction over them following the dismissal of the Second Bankruptcy Case; alternatively, the Court will permissively abstain from hearing such claims. Finally, the *Rooker-Feldman* doctrine does not preclude any requested relief on the basis of the 2023 Dugas Foreclosure Judgment because it was not a final judgment.

Thus, the Court will grant summary judgment in the Movants' favor on (1) the stay violation claim as it relates to the Ejectment Motion and (2) the other claims brought against them, and the Court will deny summary judgment on the stay violation claim as it relates to the additional filings in State Court.

## I.      SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted when the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

---

[5] Unless otherwise noted, references to "§" and "section" are to sections of the Bankruptcy Code, which is title 11 of the United States Code.

*See* Fed. R. Civ. P. 56(a).[6] The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991) ("The moving party has the initial burden to show that there is an absence of evidence to support the nonmoving party's case.") (internal quotation marks omitted).

Only if the properly supported material facts entitle the requesting party to judgment as a matter of law is it appropriate for the court to grant summary judgment. *Celotex*, 477 U.S. at 322. In moving for summary judgment, the party "must support the assertion" that "a fact cannot be . . . genuinely disputed" by: (1) "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or (2) "showing that the materials cited [by the opposing party] do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

The court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* In considering a motion for summary judgment, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie,* 526 U.S. 541, 552 (1999); *Genberg v. Porter*, 882 F.3d 1249, 1253

---

[6] Fed. R. Civ. P. 56 applies in bankruptcy adversary proceedings per Fed. R. Bankr. P. 7056.

(10th Cir. 2018). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Thus, summary judgment is appropriate "if the evidence points only one way and no reasonable inferences could support the non-moving party's position." *Genberg*, 882 F.3d at 1253.

## II. PROCEDURAL BACKGROUND

Ms. Dugas commenced her first bankruptcy case on May 10, 2024, with the filing of a voluntary chapter 13 petition, Case No. 24-10472-t13 (the "First Bankruptcy Case"). The First Bankruptcy Case was dismissed on July 10, 2024.

Ms. Dugas commenced her Second Bankruptcy Case on August 14, 2024, with the filing of a second voluntary chapter 13 petition, Case No. 24-10834-j13.

On November 6, 2024, Ms. Dugas filed the complaint in this adversary proceeding, Adv. Proc. No. 24-1029-j (the "Adversary Complaint" – AP Doc. 1). The Adversary Complaint asserts three claims against Mr. Natelson, Mr. Gallegos, and the Law Offices of Stephen Natelson:

> Count 1—Violation of Due Process in the Foreclosure Action,[7]
>
> Count 2—Violation of Procedural Guidelines in the Foreclosure Action, and
>
> Count 3—Violation of the Automatic Stay.[8]

---

[7] Count 1 also includes an assertion of violation of the automatic stay. Since that portion is duplicative of Count 3, the Court will consider the assertion of violation of the automatic stay in its consideration of Count 3.

[8] In addition to the three counts set forth above, Ms. Dugas also includes a "statement of claims" which lists: abuse of process, unjust enrichment, negligence, violation of constitutional right to due process, fraud and conspiracy to commit fraud, and federal abuse of bankruptcy process/procedure and violation of the bankruptcy stay. To the extent these are duplicative of Counts 1-3, the Court considers them in the Discussion section. To the extent this list includes additional claims, it is a bare list with no explanation for why such claims are applicable and thus has failed to state a claim upon which relief may be granted. "[I]t is well-settled that even if a party does not make a formal motion to dismiss, the Court may on its

Among the relief sought, Ms. Dugas requests that the Court dismiss the foreclosure action and return the Property to her.[9]

On January 7, 2025, Ms. Dugas filed a motion in the Second Bankruptcy Case requesting an extension of the automatic stay beyond thirty (30) days after the commencement of the Second Bankruptcy Case.[10] The Court determined that the request was untimely pursuant to § 362(c)(3)(B) and denied the request for an extension of the automatic stay.[11]

The Second Bankruptcy Case was dismissed on July 8, 2025, but this adversary proceeding remained pending.

Mr. Natelson filed the Summary Judgment Motion in this adversary proceeding on August 8, 2025, and Mr. Gallegos filed the Joinder on September 5, 2025. Ms. Dugas filed her response opposing summary judgment on August 19, 2025, and on September 3, 2025, Mr. Natelson filed a reply.

---

own initiative dismiss the complaint for failure to state a claim upon which relief can be granted . . . where the inadequacy of the complaint is apparent as a matter of law." *In re New Century TRS Holdings, Inc.*, 423 B.R. 467, 469 n.6 (Bankr. D. Del. 2010) (quoting *Wash. Petroleum & Supply Co. v. Girard Bank*, 629 F. Supp. 1224, 1230-31 (M.D. Pa. 1983)) (internal quotation marks omitted).

[9] The full list of relief sought is: "1. To Stay all action in the State Court due to the Automatic Stay being in full force and Effect. 2. To quash all Orders filed by the State District Court in regards to this case after the filing of the case. 3. To Bar Stephen Natelson from representing Ike Gallegos as he is now a witness and a defendant against his client. 4. To Dismiss the action in State Court or in the alternate stay all actions therein. 5. To award[] Compensatory plus Treble $350,000 (plus Treble)[.] 6. Punitive Damages of $1,500,000[.] 7. To return the home to Laura Kelly[.] 8. To Recommend to disbar [*sic*] to the State Bar association to disbar Stephen Natelson for malicious abuse of Process[.] 9. For such other and further relief as the Court deems just and proper under the Circumstances." Adv. Compl. at pp. 14-15.

[10] Doc. 63.

[11] Doc. 72.

### III. FACTUAL BACKGROUND[12]

#### a. Facts Not Subject to Genuine Dispute

For purposes of this decision, the Court finds that the following facts are not in genuine dispute.

On March 16, 2023, Mr. Gallegos, through his attorney Mr. Natelson, filed a Complaint for Money Due on Promissory Note and for Declaratory Judgment to Accelerate Payment on Promissory Note (the "State Court Complaint"), in *Ike Gallegos v. Laura Kelly*, D-820-CV-2023-00093 (the "Foreclosure Action") in the Eighth Judicial District Court for the State of New Mexico.

The State Court Complaint prayed *inter alia* "[f]or an order determining that as a consequence of the Defendant's [Ms. Dugas] substantial default that the Plaintiff [Mr. Gallegos] be allowed to accelerate the remaining principal balance due and to foreclose any interest in the real property that Defendant [Ms. Dugas] may have by judicial sale affording the Defendant [Ms. Dugas] a nine (9) month right of redemption."[13]

Laura Kelly, named in the State Court Complaint, is the same as the debtor and plaintiff Laura Dugas in this case.

On April 13, 2023, Laura Dugas appeared *pro se* in the Foreclosure Action and filed what was in substance an answer.

---

[12] The Court takes judicial notice of the docket and claims register, and the documents therein, in the First Bankruptcy Case (Case No. 24-10472-t13) and the Second Bankruptcy Case (Case No. 24-10834-j13), as well as the docket and documents on the docket in this adversary proceeding (Adv. Proc. No. 24-1029-j). *See* Fed. R. Evid. 201(b)(2) and (c); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its own docket), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[T]he bankruptcy court appropriately took judicial notice of its own docket[.]").

[13] AP Doc. 46-1 at p. 9.

On June 13, 2023, Mr. Gallegos, through his attorney Mr. Natelson, filed a motion for summary judgment in the Foreclosure Action.

On July 12, 2023, Laura Dugas filed a brief in opposition to the motion for summary judgment in the Foreclosure Action.

On August 21, 2023, the State Court issued the 2023 Dugas Foreclosure Judgment awarding Mr. Gallegos a money judgment and decreeing *inter alia* that "Plaintiff [Mr. Gallegos] is restored possession and ownership of the property located at 58 Lower Arroyo Hondo Road, Taos County, New Mexico [and a] Writ of Restitution shall be issued in favor of Ike Gallegos."[14]

No appeal was taken from the 2023 Dugas Foreclosure Judgment.

On October 10, 2023, the State Court entered an Order Approving Special Master's Report and Confirming Foreclosure Sale.

A Special Master's Deed was delivered and recorded.

On October 17, 2023, Laura Dugas filed a notice of appeal of the Order Approving Special Master's Report and Confirming Foreclosure Sale.

On the same day, she filed a document in the Foreclosure Action titled "Motion to Set Aside Default and Summary Judgment Rule 60 B" requesting *inter alia* "[t]o set aside Order Approving Special Master's Report and Confirming Foreclosure Sale."[15]

Ms. Dugas's appeal was dismissed for lack of finality due to the filing of her motion to set aside the judgment.

On April 23, 2024, the State Court withdrew its Order Approving Special Master's Report and Confirming Foreclosure Sale.

---

[14] AP Doc. 46-1 at p. 55.
[15] AP Doc. 46-1 at p. 2.

On May 10, 2024, Ms. Dugas filed a voluntary petition under chapter 13 of the United States Bankruptcy Code in Case No. 24-10472-t13 (*i.e.*, the First Bankruptcy Case). That case was dismissed on July 10, 2024, for Ms. Dugas's failure to timely file a chapter 13 plan and to provide the trustee with requested financial documents and information.

On August 14, 2024, Ms. Dugas filed the Second Bankruptcy Case.

Ms. Dugas's request in the Second Bankruptcy Case to extend the automatic stay was denied.[16]

In the Second Bankruptcy Case, Kurt Young was not listed as a co-debtor on Ms. Dugas's Schedule H.[17]

Mr. Natelson and Mr. Gallegos undertook no activity in the Foreclosure Action from the time the Second Bankruptcy Case was filed until September 27, 2024, when Mr. Gallegos, through his attorney Mr. Natelson, filed the Ejectment Motion seeking ejectment of Ms. Dugas from the Property and a writ of restitution. The Ejectment Motion was filed more than 30 days after the Second Bankruptcy Case was commenced.

The writ of restitution was issued in the Foreclosure Action on the same day that the Ejectment Motion was filed and was returned in October 2024.

On October 11, 2024, Mr. Gallegos, through his attorney Mr. Natelson, filed a motion for summary judgment in the Foreclosure Action on claims against Mr. Young asserted in a supplemental complaint (the "Motion for Summary Judgment Against Young"). That motion was granted on December 17, 2024 ("2024 Young Partial Summary Judgment").

---

[16] Doc. 72

[17] Doc. 1 at p. 36.

The balance of the State Court Foreclosure Action, consisting of Mr. Young's counterclaims, was disposed of after trial by entry of a judgment on April 17, 2025 ("2025 Dugas-Young Post-Trial Judgment"), which determined that Mr. Young had an interest in the Property and directed that a new foreclosure sale take place, with the redemption period for Ms. Dugas and Mr. Young to run from the date of the new sale. The new sale had not yet occurred at the time the Summary Judgment Motion was filed in this adversary proceeding.

The only motion for ejectment that Mr. Gallegos, through his attorney Mr. Natelson, filed in the Foreclosure Action was on September 27, 2024. The only motions for summary judgment that Mr. Gallegos, through his attorney Mr. Natelson, filed in the Foreclosure Action were on June 13, 2023, and on October 11, 2024.

The 2023 Foreclosure Judgment determined that as of February 7, 2023, Ms. Dugas was in default under the Option Money Promissory Note secured by the Property in the amount of $11,410, plus $375 in late fees, plus interest of $945.06 through July 7, 2023, plus default interest thereafter at 18% per year.

Ms. Dugas's Second Bankruptcy Case was dismissed on July 8, 2025.

No new foreclosure sale was noticed or took place prior to the dismissal of the Second Bankruptcy Case.

### b. The Remaining Asserted Facts

Any other remaining facts asserted by Mr. Natelson in his statement of undisputed material facts, and adopted by Mr. Gallegos in the Joinder, are either legal conclusions or not material to the Court's determination of summary judgment. Ms. Dugas also asserted facts,[18] but did not submit any evidence in support of her facts. Further, many of Ms. Dugas's asserted facts

---

[18] AP Doc. 51 at pp. 1-7.

are either legal conclusions, in accordance with the Movants' facts, or not material to the Court's determination of summary judgment.

## IV. DISCUSSION

Movants raise several grounds for summary judgment in their favor: first, that the Court lacks subject matter jurisdiction over Counts 1 and 2 because they are non-core claims; second, that the *Rooker-Feldman* doctrine precludes Ms. Dugas's requests for this Court to dismiss the Foreclosure Action in State Court and return the Property to Ms. Dugas; third, to the extent the Court has jurisdiction, that it should permissively abstain from hearing all claims; and fourth, that no violation of the automatic stay occurred.[19]

As discussed below, the Court determines that Movants are entitled to summary judgment in their favor on Counts 1 and 2, as well as Count 3 with respect to the Ejectment Motion. However, the Court will deny summary judgment on Count 3 with respect to the Motion for Summary Judgment Against Young and related documents.

### a. Subject Matter Jurisdiction

The Court first examines whether it has subject matter jurisdiction over the claims asserted in the Adversary Complaint.

Movants assert that the Court lacks subject matter jurisdiction on two bases: (1) that the underlying bankruptcy case has been dismissed, and therefore the Court does not retain jurisdiction over non-core matters and (2) that certain of Ms. Dugas's claims and requests for relief are outside of the Court's "related to" jurisdiction to begin with.

---

[19] Mr. Natelson did not raise the issue in his Summary Judgment Motion of whether an attorney who represents a client in taking an action that violates the automatic stay also violates the stay. Therefore, the Court will not address the issue in this summary judgment opinion.

11

The Court further has an independent duty to examine its jurisdiction.[20] The subject

matter jurisdiction of bankruptcy courts is derived from the jurisdiction granted to federal district

courts,[21] which is limited by 28 U.S.C. § 1334 to four matters: "(1) cases under title 11,

(2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and

(4) proceedings related to a case under title 11." *Wynn v. Innovations Credit Union (In re Wynn)*,

No. 15-12771, 2018 WL 4998099, at *2 (Bankr. D.N.M. Oct. 15, 2018) (quoting *In re Marcus

Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3rd Cir. 1991)).

The bankruptcy courts, through referral from the district courts, have "original but not

exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to

cases under title 11." 28 U.S.C. § 1334(b).[22] Such proceedings can be divided into two types:

core and non-core. "[C]ore proceedings are those that arise in a bankruptcy case or under

[t]itle 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011) (clarifying that there is no category of

---

[20] *See 1mage Software, Inc. v. Reynolds & Reynolds Co.,* 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'") (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)); *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202 (10th Cir. 1986) ("It is well settled that a federal court must dismiss a case for lack of subject matter jurisdiction, even should the parties fail to raise the issue."); *Kline v. Tiedemann (In re Kline)*, 424 B.R. 516, 528 n.30 (Bankr. D.N.M. 2010) ("[T]his Court has an obligation to dismiss a claim *sua sponte* if the court has no subject matter jurisdiction.").

[21] *Pettine v. Direct Biologics, LLC (In re Pettine)*, 655 B.R. 196, 209 (10th Cir. BAP 2023) ("A district court authorizes a bankruptcy court to hear, or to hear and determine, bankruptcy cases and proceedings by referring cases and proceedings to the bankruptcy court for the district under § 157(a). A bankruptcy court's authority to hear, or to hear and determine, cases and proceedings is dependent on such a referral, which constitutes the district court's grant of authority to the bankruptcy court to exercise the jurisdiction vested in the district court under § 1334, on the conditions and subject to the limitations set forth in § 157(b) to (e).")

[22] 28 U.S.C. § 1334(a) grants "original and exclusive jurisdiction of all cases under title 11." *See also* Footnote 21 above.

core proceedings outside of proceedings that "arise in" or "arise under" title 11).[23] Thus, "[c]ore proceedings involve rights created by bankruptcy law, or proceedings that would arise only within a bankruptcy case." *United Tort Claimants v. Quorum Health Res. (In re Otero Cnty. Hosp. Ass'n, Inc.)*, 617 B.R. 699, 704 (Bankr. D.N.M. 2020) (citing *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990)).[24]

In contrast, "[p]roceedings that fall within the Court's 'related to' jurisdiction are non-core proceedings." *Otero Cnty. Hosp.*, 617 B.R. at 704. "Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court." *Gardner*, 913 F.2d at 1518 (citing *Nat'l Acceptance Co. of America v. Price (In re Colorado Energy Supply, Inc.)*, 728 F.2d 1283, 1286 (10th Cir. 1984)). "[T]he test for determining whether a civil proceeding is related [to] bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Gardner*, 913 F.2d at 1518 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984), *abrogated on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)). "[I]f the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate," the "proceeding is related to the bankruptcy." *Gardner*, 913 F.2d at 1518 (citing *Pacor,* 743 F.2d at 994).

In this adversary proceeding, the claims can be divided into two categories: the stay violation claim (Count 3) and claims arising from violations of due process and procedure in the Foreclosure Action in State Court (Counts 1 and 2).

---

[23] *See also United Tort Claimants v. Quorum Health Res. (In re Otero Cnty. Hosp. Ass'n, Inc.)*, 617 B.R. 699, 704 (Bankr. D.N.M. 2020) ("Proceedings 'arising under title 11, or arising in a case under title 11' are core proceedings.") (quoting 28 U.S.C. § 157(b)(1)).

[24] 28 U.S.C 157(b)(2) sets forth a non-exhaustive list of core proceedings.

It is clear that the Court has subject matter jurisdiction to hear the stay violation claim. It is a core matter because it involves a claim which has no existence absent the filing of a bankruptcy case—the automatic stay at issue arose upon the filing of Ms. Dugas's bankruptcy petition in the Second Bankruptcy Case and exists only in connection with such bankruptcy case. Even after the dismissal of a bankruptcy case, it is appropriate for bankruptcy courts to maintain jurisdiction of proceedings involving stay violations. *See Johnson v. Smith (In re Johnson),* 575 F.3d 1079, 1083-84 (10th Cir. 2009) (holding that bankruptcy court had jurisdiction in adversary proceeding seeking damages under § 362(k)(1) for willful stay violation following dismissal of the underlying bankruptcy case and citing cases); *Kline v. Tiedemann (In re Kline)*, 424 B.R. 516, 528 (Bankr. D.N.M. 2010) ("[T]he bankruptcy court has jurisdiction over certain matters after dismissal of a bankruptcy case, such as jurisdiction over a claim for willful violation of the stay[.]"), *abrogated on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd*., 661 F.3d 495, 497 (10th Cir. 2011). There is no requirement that the bankruptcy court expressly retain jurisdiction over a stay violation proceeding when it dismisses the underlying chapter 13 case. *See Johnson*, 575 F.3d at 1084 ("[W]e see no basis for requiring a bankruptcy court to state explicitly that it is retaining jurisdiction over a § 362(k)(1) adversary proceeding when it dismisses an underlying Chapter 13 case[.]").

With respect to the other claims for violations of due process and procedure in the state court foreclosure litigation, even assuming these are independent causes of action, they are non-

core claims that at most would have been "related to" the underlying bankruptcy proceeding.[25, 26]

"For non-core proceedings, the case law directs the Court to use its discretion to determine whether to retain jurisdiction over related adversary proceedings following dismissal of the underlying bankruptcy case, taking the following factors into consideration '(1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related legal issues involved.'" *Viper Servs., LLC v. Fora Fin. Bus. Loans, LLC (In re Viper Servs., LLC)*, No. 15-11259, 2017 WL 5499155, at *3 n.5 (Bankr. D.N.M. Nov. 15, 2017) (quoting *Fidelity & Deposit Co. of Maryland v. Morris (In re Morris)*, 950 F.2d 1531, 1535 (11th Cir. 1992)).

Taking the above factors into consideration, the Court determines that even if (1) independent causes of action existed for the claims arising out of the Foreclosure Action in State Court and (2) it would have had "related to" jurisdiction over such claims during the pendency of the Second Bankruptcy Case, the Court will not retain jurisdiction over such claims.[27] Judicial economy would be best served by the claims being decided by the State Court in which the alleged actions took place, as the State Court has the familiarity with its own record. Fairness and convenience to the litigants is neutral, as the parties have been litigating in both this

---

[25] Generally, assertions of violation of due process and procedure during the course of litigation are not independent causes of action. Instead, they must be raised in the case in which the violations are alleged to have occurred. Since Movants do not seek summary judgment on this ground, and the Court concludes that it would not have jurisdiction over such claims anyway, the Court will not address the question of whether such independent causes of action exist.

[26] *See In re Payne*, No. 17-25504, 2017 WL 4271082, at *2 (Bankr. E.D. Wis. Sept. 22, 2017) ("The outcome of the foreclosure action could have an impact on real estate that is part of the debtor's estate, making it related to his bankruptcy case.").

[27] The Court also notes that the *Rooker-Feldman* doctrine may prohibit consideration of such claims on the basis of the 2025 Dugas-Young Post-Trial Judgment. *See* Section IV.b. of this Opinion. However, there is a wrinkle that the 2025 Dugas-Young Post-Trial Judgment was not in existence at the time Ms. Dugas filed the Adversary Complaint. Since the Court concludes that it does not have jurisdiction anyway, the Court will not analyze such issue in depth.

Court and the State Court. Based on the lack of detail in the Adversary Complaint, the degree of difficulty of the legal issues is unclear; however, the State Court has the expertise on the applicable laws and procedures involved. Therefore, given that the underlying bankruptcy has been dismissed, the Court will not retain jurisdiction over Counts 1 and 2.

**b.** ***Rooker-Feldman* Doctrine**

Movants further assert that Ms. Dugas's requests for this Court to dismiss the Foreclosure Action and return the Property to her are barred on the basis of the *Rooker-Feldman* doctrine as an impermissible collateral attack on the 2023 Dugas Foreclosure Judgment. For the reasons set forth below, the Court determines that the 2023 Dugas Foreclosure Judgment is not a final judgment and therefore the *Rooker-Feldman* doctrine does not apply to it.[28]

"The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Miller v. Deutsche Bank Nat'l Tr. Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)). Movants argue that Ms. Dugas's requests for the return of ownership and possession of the Property and dismissal of the Foreclosure Action in effect seek to overrule the 2023 Dugas Foreclosure Judgment.

The *Rooker-Feldman* doctrine precludes the Court from reviewing on the merits, modifying, or setting aside a state court judgment. *See Mayotte v. U.S. Bank N.A.*, 880 F.3d 1169, 1174 (10th Cir. 2018) ("What *is* prohibited under *Rooker-Feldman* is a federal action that tries to *modify or set aside* a state-court judgment because the state proceedings should not have

---

[28] Mr. Natelson and Mr. Gallegos do not assert that the *Rooker-Feldman* doctrine bars any other claims or relief requested. And indeed, with respect to the stay violation claim, "*Rooker-Feldman* places no bar to a bankruptcy court's authority to determine the extent of, and enforce, the automatic stay." *In re Shook*, No. 24-10724, 2024 WL 4270570, at *6 (Bankr. D.N.M. Sept. 20, 2024).

led to that judgment.") (emphasis in original); *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) ("*Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.") (citing *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 732 (7th Cir. 1994)). "*Rooker-Feldman* is jurisdictional in the sense that federal courts do not have jurisdiction to modify or set aside a state court judgment because the state proceedings should not have led to that judgment." *Bednar v. RCB Bank (In re Bednar)*, No. 18-099, 2019 WL 3928844, at \*7 (10th Cir. BAP Aug. 20, 2019) (citing *Mayotte,* 880 F.3d at 1170).

However, "*Rooker-Feldman* and its progeny do 'not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment.'" *Bednar*, 2019 WL 3928844, at \*7 (quoting *Mayotte,* 880 F.3d at 1174). Although *Rooker-Feldman* prevents federal courts from in effect acting as an appellate court to review the merits of or modify a state court judgment or order, it does not apply to override the authority of bankruptcy courts to apply provisions of the Bankruptcy Code that affect state court judgments. As observed by the Ninth Circuit, "[t]he *Rooker-Feldman* doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code, or that, by their nature, could arise only in the context of a federal bankruptcy case." *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 871 (9th Cir. 2005). For example, the *Rooker-Feldman* doctrine does not preclude bankruptcy courts from "modifying contractual obligations that have been reduced to judgment in state court, avoiding liens found to be valid and enforceable in a state court judgment, or discharging debts upon which a state court judgment is based, pursuant to provisions of the Bankruptcy Code." *In re S-Tek 1, LLC*, 625 B.R. 519, 525 (Bankr. D.N.M. 2020).

In this adversary proceeding, the Court first examines the finality of the state court judgment. "Only final state court judgments and orders are entitled to [the application of] *Rooker-Feldman*." *Bednar*, 2019 WL 3928844, at *7 (citing *Exxon Mobil*, 544 U.S. at 293).[29] "New Mexico courts generally consider a judgment final when 'all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible.'" *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2007-NMCA-011, ¶ 17 (quoting *Principal Mut. Life Ins. Co. v. Straus*, 1993-NMSC-058, ¶ 6); *see also McCutcheon v. Davide (In re Davide)*, No. 24-11223, 2025 WL 2848337, at *6 (Bankr. D.N.M. Oct. 7, 2025) ("Generally, a final judgment must adjudicate all claims in the action."). With respect to New Mexico foreclosure judgments specifically, the foreclosure judgment is generally a final judgment with respect to the declaration of the parties' rights unless modified:

> We have held that the district court's decree of foreclosure is both final and interlocutory in its operation. The decree serves two functions: first, it determines the rights of the parties in the property; and, second, it fixes the manner and terms of the foreclosure sale. Whereas, the court's judgment with respect to the manner and terms of sale is interlocutory, the declaration of the parties' rights may be construed as a final judgment unless modified under the provisions of NMSA 1978, Section 39-1-1 (1917).

*Grygorwicz v. Trujillo*, 2009-NMSC-009, ¶ 8 (internal citations omitted).[30, 31]

In this matter, Movants assert that the 2023 Dugas Foreclosure Judgment is a final judgment with respect to its ruling that "Plaintiff [Mr. Gallegos] is restored possession and

---

[29] *See also Lance v. Dennis*, 546 U.S. 459, 463 (2006) ("[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over *final* state-court judgments.") (emphasis added).

[30] NMSA 1978, § 39-1-1 provides a 30-day period for the filing of motions directed against final judgments and decrees, and an additional 30 days from the filing of any such motion for the state district court to dispose of the motion or it shall be deemed denied.

[31] *See also In re Murphey*, 563 B.R. 373, 378 (Bankr. D.N.M. 2016) ("Under New Mexico law, a judgment for foreclosure is final with respect to the rights of the parties in the property, and interlocutory with respect to the manner and terms of the foreclosure sale.") (citing *Grygorwicz*, 2009-NMSC-009, ¶ 8 and *Speckner v. Riebold*, 86 N.M. 275, 277 (1974)).

ownership of the property located at 58 Lower Arroyo Hondo Road, Taos County, New Mexico [and a] Writ of Restitution shall be issued in favor of Ike Gallegos." However, the 2023 Dugas Foreclosure Judgment also awarded Mr. Gallegos a money judgment, which is inconsistent with the award of ownership of the Property, and the State Court subsequently approved a foreclosure sale of the Property—presumably to be applied to the money judgment—which is also inconsistent with the award of ownership of the Property. The subsequent occurrence of the foreclosure sale and approval of the foreclosure sale thus renders non-final or supersedes the ruling restoring ownership of the Property to Mr. Gallegos. Therefore, based on the undisputed material facts, the *Rooker-Feldman* doctrine does not apply to bar relief on the basis of the 2023 Dugas Foreclosure Judgment.

### c. Claim Preclusion and Issue Preclusion

Movants did not explicitly assert claim preclusion or issue preclusion, which if applicable would "bar subsequent litigation in bankruptcy court of claims and issues determined in a prior final state court judgment." *In re Lopez*, No. 21-10836, 2022 WL 1160607, at *2 (Bankr. D.N.M. Apr. 19, 2022). "Under the Full Faith and Credit statute, 28 U.S.C. § 1738, 'a federal court must give to a state-court judgment the same preclusive effect as would [be] given that judgment under the law of the State in which the judgment was rendered.'" *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

Bankruptcy courts may raise claim preclusion and issue preclusion *sua sponte*, although they are "advised to be 'cautious' in doing so." *Arrieta v. Smith (In re Smith)*, 673 B.R. 1, 9 (8th Cir. BAP 2025).[32] Here, Movants assert that the Court should follow the 2023 Dugas Foreclosure

---

[32] *See also In re First Premier Funding, LLC*, 654 B.R. 142, 150 n.5 (Bankr. N.D. Ill. 2023), *aff'd sub nom. First Premier Funding, LLC v. Cnty. of Cook (In re First Premier Funding, LLC)*, No. 23-CV-14854, 2024 WL 5040837 (N.D. Ill. Dec. 9, 2024) ("The Court may raise an issue of collateral estoppel *sua sponte* if it gives the parties an opportunity to argue the issue.") (quoting *Nguyen v. Kaiser Found.*

Judgment's adjudication of the rights between the parties on the basis that it is a final judgment—this operates substantively as a request for the Court to give such adjudication issue preclusive effect. Therefore, the Court will analyze issue preclusion.[33]

"Issue preclusion . . . prevents a party who lost on an issue decided in a prior lawsuit from relitigating the same issue in a subsequent suit." *Rael v. Gonzales (In re Gonzales)*, 667 B.R. 357, 367 (Bankr. D.N.M. 2025) (citing *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009)). "Issue preclusion may be invoked to bar relitigation of issues of fact determined in a prior state court action resulting in a final judgment[.]" *Gonzales*, 667 B.R. at 367 (citing *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 764 (10th Cir. 1988)). In order for a final judgment to have issue preclusive effect under New Mexico law, there are four requisite elements: "first, the parties in the second suit must be the same or in privity with the parties in the first suit; second, the causes of action must be different; third, the issue or fact must have been actually litigated in the first case; and fourth, the issue must have been necessarily

---

*Health Plan, Inc.*, No. 17-905, 2019 WL 3769967, at *9 n.4 (C.D. Cal. June 27, 2019)); *Arizona v. California*, 530 U.S. 392, 412 (2000), *supplemented by* 531 U.S. 1 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.") (internal citation and quotation marks omitted).

[33] It does not appear that claim preclusion is relevant. "Claim preclusion, sometimes referred to as res judicata, prohibits relitigation of any claims that were raised or could have been raised in a prior action between the same parties or their privies. The doctrine serves to promote judicial efficiency by preventing multiple lawsuits and to enable the parties to rely on the finality of adjudications." *Greenstein v. Wells Fargo Bank, N.A. (In re Greenstein)*, No. 14-1101, 2016 WL 305345, at *7 (9th Cir. BAP Jan. 26, 2016) (internal citations and quotation marks omitted). In order for a final judgment to have claim preclusive effect under New Mexico law, "there are four requisite elements[:] . . . (1) the same party or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject matter; and (4) the same cause of action in both suits.'" *Pidcock v. McCune (In re McCune)*, No. 21-1013, 2023 WL 2879278, at *6 (Bankr. D.N.M. Apr. 10, 2023) (quoting *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997) (citing *Myers v. Olson*, 1984-NMSC-015, ¶ 9)). In addition, "the party to be precluded must have had a 'full and fair' opportunity to litigate the claim in the prior action." *McCune*, 2023 WL 2879278, at *6 (citing *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶ 14).

determined in that case." *In re Lopez*, No. 21-10836, 2022 WL 1160607, at *2 (Bankr. D.N.M. Apr. 19, 2022) (quoting *Blea v. Sandoval*, 1988-NMCA-036, ¶ 18).

Further, "[w]hether the doctrine [of issue preclusion] should be applied is within the [trial] court's discretion." *Strategic Funding Source, Inc. v. Evans (In re Evans)*, 667 B.R. 162, 171 (Bankr. D.N.M. 2025) (quoting *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 14). Issue preclusion is "not mandated in the Constitution or by statute"—it is instead "the product of court precedent based on a court's exercise of its equitable powers." *Welch v. Giron (In re Giron)*, 610 B.R. 670, 677 (Bankr. D.N.M. 2019) (quoting *Acacia Villa v. United States,* 24 Cl. Ct. 445, 448 (1991)). Therefore, "[e]ven when the elements of collateral estoppel are present, the decision whether to apply the doctrine is within the discretion of the trial court." *Giron*, 610 B.R. at 677 (quoting *United States v. Kaytso,* 868 F.2d 1020, 1022 (9th Cir. 1988)); *see also Arapahoe Cnty. Pub. Airport Auth. v. FAA,* 242 F.3d 1213, 1220 (10th Cir. 2001) (favorably citing cases which hold that issue preclusion is an equitable doctrine applied at the court's discretion).

In this matter, the Court first considers the prerequisite that in order to be entitled to issue preclusion, a judgment must be a final judgment. For the reasons set forth above in Section IV.b., the 2023 Dugas Foreclosure Judgment is not a final judgment. Therefore, it is not entitled to issue preclusive effect. Further, even if the 2023 Dugas Foreclosure Judgment were a final judgment, this Court would exercise its discretion not to give it issue preclusive effect due to the irregularities in the Foreclosure Action.

### d. Permissive Abstention

Movants assert that, to the extent the Court has jurisdiction over the claims, the Court should permissively abstain from hearing them. For the reasons set forth below, the Court will

not abstain from deciding the stay violation claim (Count 3), but in the event that it has

jurisdiction over the other claims (Counts 1 and 2), the Court will permissively abstain from

hearing such claims.

The non-exclusive permissive abstention factors the Court may consider include:

(1) The effect of abstention and remand on the administration of the bankruptcy estate, including whether claims could be timely adjudicated in state court to meet the needs of the bankruptcy case;

(2) The extent to which state law issues predominate over bankruptcy issues;

(3) The difficult or unsettled nature of the applicable law;

(4) Whether abstention and remand serves principles of judicial economy;

(5) The presence of a related proceeding commenced in state court or another non-bankruptcy court;

(6) The feasibility of severing non-core state law claims from core bankruptcy claims;

(7) The jurisdictional basis for the bankruptcy court to hear the claims in the removed proceeding, if any, other than "related to" jurisdiction;

(8) Whether the removed proceeding is a core proceeding;

(9) The likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(10) The existence of a right to jury trial;

(11) The presence of non-debtor parties;

(12) The burden the proceeding places on the bankruptcy court's docket;

(13) Whether remand lessens the possibility of inconsistent results;

(14) Whether the court where the action originated has greater expertise;

(15) The status of the proceeding in the state court prior to removal and the status of the proceeding in bankruptcy court; and

(16) Whether the nature of the proceeding is better suited for state court or bankruptcy court.

*Bright Green Corp. v. Fikany (In re Bright Green Corp.)*, 671 B.R. 280, 292 (Bankr. D.N.M.

2025) (citing cases). "Bankruptcy courts have discretion to determine the relative weight to give

each factor." *Id.*

22

In this adversary proceeding, the Court determines that the state law claims in Counts 1 and 2 can easily be severed from the stay violation claim in Count 3. The actions that Ms. Dugas argues violated the automatic stay in the Second Bankruptcy Case (Count 3) are not part of the allegations of violations of due process (Count 1) and procedural guidelines (Count 2) in the Foreclosure Action.[34]

Reviewing the remaining permissive abstention factors in light of the ability to sever the bankruptcy claim from the state law claims, the Court concludes that even if it has jurisdiction over the non-core state law claims, it is appropriate to permissively abstain from hearing them. Factors (1), (2), (5), (7), (8), and (16) weigh in favor of permissive abstention from the state law claims: factor (1)—the Second Bankruptcy Case has been dismissed, so determination of these claims will have no impact on an ongoing bankruptcy case; factor (2)—these are purely state law issues; factor (5)—the Foreclosure Action is still proceeding; factor (7)—the Court does not have a jurisdictional basis other than "related to" jurisdiction to hear the state law claims; factor (8)—the state law claims are non-core matters; and factor (16)—the state law claims are better suited for state court. The other abstention factors are either neutral, not relevant, or would be given little weight.

In contrast, reviewing the remaining permissive abstention factors in light of the ability to sever the bankruptcy claim from the state law claims, the Court concludes that it is not appropriate to permissively abstain from hearing the bankruptcy claim regarding stay violation. Factors (2), (3), (7), (8), and (16) weigh against permissive abstention from the stay violation claim: factor (2)—this is purely a matter of bankruptcy law; factor (3)—there is a circuit split on the extent to which the automatic stay was in effect; factor (7)—a stay violation claim arises

---

[34] Except to the extent Count 1 is duplicative of Count 3 in asserting violation of the automatic stay.

under title 11; factor (8)—the stay violation claim is a core matter; and factor (16)—the stay violation claim is better suited for bankruptcy court. The other abstention factors are either neutral, not relevant, or would be given little weight.

Thus, to the extent the Court has jurisdiction over the state law claims, the Court will permissively abstain from hearing such claims. However, the Court will not abstain from determining the stay violation claim.

### e. Stay violation claim

1. *To what extent did the automatic stay terminate on the 30th day after commencement of the Second Bankruptcy Case?*

Having determined that the Court retains jurisdiction over the stay violation claim and that it will not permissively abstain from hearing and determining the claim, the Court considers the merits of the stay violation claim. Movants assert that they are entitled to judgment in their favor as a matter of law on Ms. Dugas's claim for stay violation because, pursuant to § 362(c)(3)(A), the automatic stay terminated thirty (30) days after the filing of the Second Bankruptcy Case. Section 362(c)(3) applies when a second bankruptcy case is filed within one year following the dismissal of a prior bankruptcy case. There is a circuit split as to the effect of § 362(c)(3)(A), and whether the entire stay terminates on the 30th day after commencement of the second case, or whether the stay remains in effect with respect to property of the estate.[35] If

---

[35] There is also a third approach—the *Bender* approach—which is "a hybrid approach of agreeing with the minority that 'with respect to the debtor' does not limit the termination of the automatic stay as to property of the estate but following *Paschal* in finding that the termination is limited to the continuation of formal 'actions taken' prior to the bankruptcy filing." *In re Dev*, 593 B.R. 435, 445 (Bankr. E.D.N.C. 2018) (citing *In re Bender*, 562 B.R. 578, 583 (Bankr. E.D.N.Y. 2016) and *In re Paschal*, 337 B.R. 274 (Bankr. E.D.N.C. 2006)). This approach focuses on the first part of § 362(c)(3)(A) which terminates the stay "with respect to any action taken" and concludes that "this phrase means that the § 362(a) stay is only terminated . . . with respect to continuation of formal legal proceedings that were commenced against the debtor pre-petition." *Bender*, 562 B.R. at 582 (citing *Paschal*, 337 B.R. at 280). Thus, the *Bender* approach provides that "under § 362(c)(3), the § 362(a) stay is only terminated as to the

the entire stay terminated 30 days after the filing of the Second Bankruptcy Case, there would clearly be no stay violation because the actions at issue all occurred more than 30 days after the filing. The Court will review the positions and reasoning on both sides of the circuit split below.

Both the majority view (that the stay remains in effect with respect to property of the estate) and the significant minority view (that the entire stay terminates on the 30th day after case commencement) begin with recognition that the automatic stay is an important protection in bankruptcy. *E.g.*, *Smith v. Maine Bureau of Revenue Servs. (In re Smith)*, 910 F.3d 576, 580 (1st Cir. 2018) ("The automatic stay is a 'fundamental . . . protection[] provided by the bankruptcy laws.'") (quoting *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986)). Courts then turn to the language of § 362(c)(3).

Section 362(c)(3) provides:

> [I]f a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—
>
> > (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case; [and]
> >
> > (B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed[.]

---

continuation of judicial, administrative or other proceedings commenced prior to the bankruptcy filing." *Bender*, 562 B.R. at 583.

A.  *The majority view*

The majority view, which has been adopted by the Fifth Circuit Court of Appeals as well as the Tenth Circuit Bankruptcy Appellate Panel (BAP), is that the stay terminates under § 362(c)(3)(A) as to actions against the debtor but remains in effect with respect to actions against property of the estate.[36] Under this view, the plain language of § 362(c)(3)(A) governs and the meaning of the phrase "with respect to the debtor" is clear.[37] In *Rose v. Select Portfolio Servicing, Inc.*, the Fifth Circuit explained, "In § 362(c)(3)(A), Congress stated that 'the stay under [§ 362(a)] . . . shall terminate *with respect to the debtor*.' There is no mention of the bankruptcy estate, and we decline to read in such language." 945 F.3d 226, 230 (5th Cir. 2019) (modifications in *Rose*).

The majority view also relies on the proposition that "Congress knew how to [eliminate] the entire stay, and in fact did so in the very next section of the statute." *Rose*, 945 F.3d at 230 (quoting *In re Williford*, No. 13-31738, 2013 WL 3772840, at *3 (Bankr. N.D. Tex. July 17, 2013)); *see also In re McGrath*, 621 B.R. 260, 265 (Bankr. D.N.M. 2020) (explaining that "Congress knew how to terminate the stay entirely" and citing § 362(c)(4)(A)(i)). Section 362(c)(4)(A)(i) provides:

> [I]f a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7

---

[36] *E.g.*, *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226 (5th Cir. 2019); *Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813 (10th Cir. BAP 2008); *First Fin. Bank v. Clark*, 627 B.R. 663 (N.D. Ind. 2021); *In re Madsen*, 639 B.R. 761 (Bankr. E.D. Cal. 2022); *In re McGrath*, 621 B.R. 260 (Bankr. D.N.M. 2020); *In re Markoch*, 583 B.R. 911 (Bankr. W.D. Mich. 2018); *In re Roach*, 555 B.R. 840 (Bankr. M.D. Ala. 2016); *In re Hale*, 535 B.R. 520 (Bankr. E.D.N.Y. 2015); *In re Johnson*, 335 B.R. 805 (Bankr. W.D. Tenn. 2006); *In re Jones*, 339 B.R. 360 (Bankr. E.D.N.C. 2006); *see also Bender*, 562 B.R. at 579 n.1 (collecting cases).

[37] *E.g.*, *Rose*, 945 F.3d at 230 (citing the "plain language of the provision"); *Holcomb*, 380 B.R. at 816 ("[W]e see no ambiguity in the language of the statute. . . . As observed in *Jones*, 'a plain reading of those words ['with respect to the debtor'] makes sense[.]'" (citing *Jones*, 339 B.R. at 363)).

26

after dismissal under section 707(b), *the stay under subsection (a) shall not go into effect* upon filing of the later case.

(emphasis added). Courts in the majority contrast the language providing that the stay "shall not go into effect" in § 362(c)(4)(A)(i) with the language providing that the stay "shall terminate with respect to the debtor" in § 362(c)(3)(A), and reason that "with respect to the debtor" is a "qualifier . . . [which] can only be interpreted as implying a limitation upon the scope of the termination of the automatic stay." *McGrath*, 621 B.R. at 265 (quoting *Rose*, 945 F.3d at 231).

The majority view further reasons that its reading of § 362(c)(3)(A) is consistent with the other provisions of the Bankruptcy Code, as well as the policies behind bankruptcy law. With respect to other provisions, the Fifth Circuit provides that § 362(c)(3)(A) "must be read in conjunction with § 362(a)" which "operates as a stay of certain actions in three categories: against the debtor, the debtor's property, and property of the bankruptcy estate." *Rose*, 945 F.3d at 230 (citing *Smith*, 910 F.3d at 580). Since § 362(c)(3)(A) references the stay "with respect to the debtor" terminating on the 30th day, the majority reasons that the stay remains in place with respect to property of the bankruptcy estate.

Regarding the policies behind bankruptcy law, the majority approach emphasizes that "[a]t the core of bankruptcy law is the policy of 'obtaining a maximum and equitable distribution for creditors.'" *Holcomb*, 380 B.R. at 816 (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563 (1994)). Keeping the stay in place with respect to property of the estate prevents the situation where "a single creditor, who may be oversecured, [has] full access to property that would otherwise be property of the estate." *Id.* The majority reasons that "[s]uch property may be necessary to implement a debtor's Chapter 13 plan; or, in a Chapter 7 case, equity in the property above the creditor's secured interest could be realized by the trustee to pay a dividend to

creditors. . . . Maintaining the stay with respect to such property is an important creditor

protection." *Id.*

Finally, the majority approach notes that "there is an easy creditor remedy if the limited

stay relief of § 362(c)(3)(A) proves inadequate: a motion for relief from stay." *McGrath*, 621

B.R. at 266. "On a showing of cause for stay relief, § 362(d) requires prompt action. If no

grounds exist, on the other hand, then the estate and/or other creditors may benefit by leaving the

stay in place." *Id.*

    B.  *The significant minority view*

In contrast, the significant minority view, which has been adopted by the First Circuit

Court of Appeals, concludes that under § 362(c)(3)(A) the automatic stay terminates in its

entirety on the 30th day after the filing of the second bankruptcy case.[38]

Courts adopting the minority view have determined that § 362(c)(3)(A) is ambiguous and

the "meaning is not plain." *Smith*, 910 F.3d at 581. Even many of the courts which adopt the

majority approach concede that § 362(c)(3)(A) is inartfully drafted.[39]

---

[38] *E.g., Smith v. Maine Bureau of Revenue Servs. (In re Smith)*, 910 F.3d 576 (1st Cir. 2018); *Reswick v. Reswick (In re Reswick)*, 446 B.R. 362 (9th Cir. BAP 2011); *Vitalich v. Bank of N.Y. Mellon*, 569 B.R. 502 (N.D. Cal. 2016); *St. Anne's Credit Union v. Ackell*, 490 B.R. 141 (D. Mass. 2013); *In re Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009); *In re Jupiter*, 344 B.R. 754 (Bankr. D.S.C. 2006).

[39] *E.g., McGrath*, 621 B.R. at 264 ("It is no revelation to say that § 362(c)(3)(A) is not well drafted." (citing *In re Baldassaro*, 338 B.R. 178, 182 (Bankr. D.N.H. 2006) ("§ 362(c)(3) is very poorly written."); *In re Charles*, 332 B.R. 538, 541 (Bankr. S.D. Tex. 2005) (providing that § 362(c)(3) is "at best, particularly difficult to parse and, at worst, virtually incoherent"); *In re Paschal*, 337 B.R. 274, 277 (Bankr. E.D.N.C. 2006) ("In an Act [BAPCPA] in which head-scratching opportunities abound for both attorneys and judges alike, § 362(c)(3)(A) stands out.")); *Roach*, 555 B.R. at 845 ("Nearly all courts agree that § 362(c)(3)(A) is not a model of skillful draftsmanship."); *Jones*, 339 B.R. at 363 ("Once again, warily . . . the court re-enters the briar patch that is § 362(c)(3)(A)").

In determining that there is no plain meaning, the First Circuit explains that a "primary obstacle to [the majority's] reading is that the phrase 'with respect to the debtor' would most naturally be read to terminate the stay only for actions against the debtor, and not . . . for actions against both the debtor and the debtor's property." *Smith*, 910 F.3d at 582 (citing *In re Daniel*, 404 B.R. 318, 323 (Bank. N.D. Ill. 2009) (noting this anomaly); *In re Bender*, 562 B.R. 578, 583 (Bankr. E.D.N.Y. 2016) (same). Yet "[n]o court decision has adopted this narrow interpretation." *See Reswick v. Reswick (In re Reswick)*, 446 B.R. 362, 367-68 (9th Cir. BAP 2011).

Further, the minority approach finds that the majority view "gives no force to the first three 'with respect to' clauses." *Smith*, 910 F.3d at 584. As a reminder, § 362(c)(3)(A) provides that in a second bankruptcy case where certain conditions are met, "the stay under subsection (a) **with respect to** any action taken **with respect to** a debt or property securing such debt or **with respect to** any lease shall terminate **with respect to** the debtor on the 30th day after the filing of the later case" (emphasis added). The First Circuit determines that, "The provision is a collection of 'with respect to' phrases, and it is not obvious how the phrases relate to each other, or how the phrases connect to other related provisions." *Smith*, 910 F.3d at 584. Therefore, the First Circuit concludes that "the preference against superfluities is of limited help." *Id.* (citing *Ardente v. Standard Fire Ins. Co.*, 744 F.3d 815, 819 (1st Cir. 2014) (rejecting application of the rule against superfluities where "redundancies abound" (quoting *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th Cir. 2010)))).[40]

---

[40] The First Circuit also finds other canons of statutory interpretation unhelpful in light of the inartful drafting of § 362(c)(3)(A). *Smith*, 910 F.3d at 583.

The minority view further bolsters its conclusion that the phrase "with respect to the debtor" is superfluous in § 362(c)(3)(A) by referencing a survey of the phrase in BAPCPA. *Smith*, 910 F.3d at 585 (citing Peter E. Meltzer, *Won't You Stay a Little Longer? Rejecting the Majority Interpretation of Bankruptcy Code § 362(c)(3)(A)*, 86 Am. Bankr. L.J. 407, 430-31 (2012)). The survey found that all ten stand-alone uses of the phrase "with respect to the debtor"/ "with respect to a debtor" in the Bankruptcy Code were added by BAPCPA and all could be read as "filler." *Smith*, 910 F.3d at 585 (citing Meltzer, *supra*, at 430-31). The First Circuit concluded that:

> Congress may have used the phrase "with respect to a" or "the debtor" in BAPCA to reemphasize that a provision applied to the debtor rather than to add new information about the meaning or scope of a provision. In light of this pattern across BAPCPA . . . it would be odd for Congress to have chosen "with respect to the debtor" to articulate an important reform, one placing a highly consequential limit on termination of the stay.

*Smith*, 910 F.3d at 585.

### ii. The minority view then applies statutory context and congressional purpose to interpret § 362(c)(3)(A) and construes it to terminate the entire stay

Concluding that the use of the phrase "with respect to the debtor" is ambiguous in § 362(c)(3), the minority approach looks to statutory context and congressional purpose to interpret § 362(c)(3)(A). First, the minority view evaluates § 362(c)(3)(A) in the context of stay termination more broadly:

> The automatic stay operates differently for first-time, second-time, and subsequent filers. For first-time filers, the stay is automatic and permanent, at least until the bankruptcy case closes or a court acts to modify the stay. *See* 11 U.S.C. §§ 362(a)(1)-(2); *id.* § 362(d). And when a debtor has pending in one year three or more petitions for bankruptcy, § 362(c)(4) provides that "the stay under subsection (a) shall not go into effect upon the filing of the [third or subsequent] case." *Id.* § 362(c)(4). Section 362(c) seems to establish a system of progressive protections, so protections for second-time filers should fall, as the bankruptcy court put it, "[i]n the middle."

*Smith*, 910 F.3d at 586.

The minority approach also examines § 362(c)(3)(A) in connection with § 362(c)(3)(B), which provides that:

> [O]n the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period **only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed**[.]

§ 362(c)(3)(B) (emphasis added). The First Circuit explains:

> For purposes of the extension, "a case is presumptively filed not in good faith" for several categories of filers, including filers like Smith whose previous case was dismissed for failure to "perform the terms of a plan confirmed by the court." § 362(c)(3)(C). However, that "presumption may be rebutted by clear and convincing evidence." *Id*.
>
> \*\*\*
>
> When read alongside § 362(c)(3)(B)'s extension process, [the] interpretation of § 362(c)(3)(A) [as terminating the entire stay] is consistent with these goals of bankruptcy. A second-time filer with a meritorious bankruptcy case, or a creditor whose self-interest dictates it, may get an extension of the stay on "demonstrat[ing] that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). Notably, courts must act quickly on these requests; Congress provided that any hearing on a request for an extension must be "completed before the expiration of the 30-day period." *Id.* Section 362(c)(3)(B) reflects an attempt by Congress to ensure that certain second-time filers who meet an enhanced burden have an escape route from the termination of the entire automatic stay, including as to actions against estate property.

*Smith*, 910 F.3d at 588.

Finally, the minority view concludes that termination of the entire stay on the 30th day is consistent with congressional intent:

> At "[t]he heart of [BAPCPA's] consumer bankruptcy reforms," the House Judiciary Committee report accompanying BAPCPA said, were "provisions intended to deter serial and abusive bankruptcy filings." H.R. Rep. No. 109–31(I), at 2 (2005); *see also* Sara Sternberg Greene, *The Failed Reform: Congressional Crackdown on Repeat Chapter 13 Bankruptcy Filers*, 89 Am. Bankr. L.J. 241, 242 (2015). Among these reforms was § 362(c)(3)(A). Congress described that provision as an "amend[ment to] section 362(c) of the Bankruptcy Code to terminate the automatic stay within 30 days in a chapter 7, 11, or 13 case filed by or against an individual if such individual was a debtor in a previously

dismissed case pending within the preceding one-year period." H.R. Rep. No. 109-31(I), at 69 (2005).

*Smith*, 910 F.3d at 589-90.

> C. *This Court will follow the 10th Circuit BAP*

Having reviewed the majority and significant minority approaches, the Court will follow the majority approach because it was adopted by the 10th Circuit BAP in a published opinion, this Court is within the Tenth Circuit, and there is no compelling reason to depart from that approach.

> Though this Court may not technically be bound by the decisions of the Tenth Circuit Bankruptcy Appellate Panel (the "Tenth Circuit BAP"), the Court will generally treat published Tenth Circuit BAP decisions as persuasive authority. *See In re Wenzel,* 415 B.R. 510, 516-17 (Bankr. D. Kan. 2009) (acknowledging that the bankruptcy court might not be bound to follow a BAP decision, but that the "Court's practice is to give appropriate deference to published BAP decisions and treat them as persuasive authority, absent a compelling reason to depart.").

*In re Rodriguez*, 487 B.R. 275, 288 (Bankr. D.N.M. 2013). In this case, the Court does not weigh in on the merits of the two approaches other than to conclude that there is no compelling reason to depart from the 10th Circuit BAP, and the Court will therefore follow *Holcomb*, which adopts the majority view. *Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813 (10th Cir. BAP 2008).[41] Thus, in this instance the automatic stay in the underlying bankruptcy case—the Second Bankruptcy Case—terminated as to actions taken against the debtor on the 30th day but remained in place as to actions taken against property of the estate.

---

[41] Indeed, this Court has followed *Holcomb* on this issue before. *Rodriguez*, 487 B.R. at 288 ("[T]he Court regards *Holcomb* as persuasive authority.").

2. *With the stay in place as to property of the estate, did the actions taken violate the automatic stay?*

Ms. Dugas asserts that the automatic stay in the Second Bankruptcy Case was violated by the filing of the following documents in the Foreclosure Action: (1) the Ejectment Motion, (2) the Motion for Summary Judgment Against Young, (3) the memorandum in support of the Motion for Summary Judgment Against Young, (4) the reply in support of the Motion for Summary Judgment Against Young, (5) the notice of completion of briefing, and (6) the request for hearing.

There is no dispute that the actions affecting the property to collect a debt took place beyond the 30th day after commencement of the Second Bankruptcy Case. The Second Bankruptcy Case commenced on August 14, 2024. The 30th day after the Second Bankruptcy Case commenced was September 13, 2024. Movants took no action in the Foreclosure Action from the commencement of the Second Bankruptcy Case until September 27, 2024, when they filed the Ejectment Motion seeking ejectment of Ms. Dugas from the Property and a writ of restitution. They filed the Motion for Summary Judgment Against Young and memorandum in support of such motion on October 11, 2024. Therefore, the automatic stay had terminated with respect to Ms. Dugas but remained in place with respect to property of the estate at the time of the relevant actions.

The first issue in determining whether a stay violation occurred where the stay remained in place with respect to property of the estate is what relevant property of the estate existed at the time of the commencement of the Second Bankruptcy Case. In this matter, since the State Court entered the order withdrawing approval of the foreclosure sale, Ms. Dugas may have had an ownership interest in the Property at the time the Second Bankruptcy Case was commenced which became property of the bankruptcy estate. *See, e.g., In re Milasinovich*, No. 13-12294,

33

2014 WL 644455, at *5 (Bankr. D.N.M. Feb. 19, 2014) (providing that debtor lost ownership interest in the house, other than redemption right, upon entry of order approving special master's sale); *Plaza Nat'l Bank v. Valdez,* 1987-NMSC-105, ¶ 12 (providing that title to foreclosed property transfers upon entry of order approving special master's sale).

Next, the Court examines the actions which Ms. Dugas assert violated the stay. The Ejectment Motion which sought to eject Ms. Dugas from the Property and obtain a writ of restitution was brought against Ms. Dugas personally. The automatic stay was terminated with respect to Ms. Dugas prior to the filing of the Ejectment Motion, and the Ejectment Motion does not impact any potential bankruptcy estate interest in the Property. Removing Ms. Dugas from the Property did not affect any potential bankruptcy estate interest in the Property, and therefore did not violate the automatic stay. The Court will therefore grant summary judgment in the Movants' favor on this issue.

The other filings at issue—the Motion for Summary Judgment Against Young, memorandum in support of such motion, reply in support of such motion, notice of completion of briefing, and request for hearing—could have affected the bankruptcy estate's potential ownership interest in the Property, because they seek to adjudicate ownership of the Property. A determination that Mr. Young had a valid 50% ownership interest in the Property would have meant that the bankruptcy estate's potential ownership interest was reduced. Therefore, the Court is unable to rule as a matter of law that such filings did not violate the automatic stay. The Court will deny summary judgment on this issue.[42]

---

[42] The Court notes that it appears damages, if any, would be nominal even if it were determined that a stay violation occurred.

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will enter an order granting the Summary Judgment Motion in part and denying it in part.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 14, 2026

COPY TO:

Debtor-Plaintiff
Laura Kelly Dugas, *pro se*
709 Parkland Cir SE
Albuquerque, NM 87108
*Via U.S. Mail*

Counsel for Defendant Stephen Natelson
Charles R. Hughson
Rodey, Dickason, Sloan, Akin & Robb, P.A
*Electronic notice via CM/ECF*

Counsel for Defendant Ike Gallegos
Christopher M. Gatton
Marcus Anthony Sedillo
Gatton & Associates
*Electronic notice via CM/ECF*